IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KAREN E. GREENE                    *

          Plaintiff           *

          vs.                 *    CIVIL ACTION NO. MJG-13-190

HARRIS CORPORATION, et al.         *

          Defendants          *

*         *         *         *         *         *         *         *         *

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

The Court has before it Defendant Harris Corporation's

Motion to Dismiss [Document 8], Defendant Harl Dan Pierce's

Motion to Dismiss [Document 13], and the materials submitted

relating thereto.  The Court finds a hearing unnecessary.


I.   SUMMARY

Plaintiff filed the Complaint [Document 2] in the Circuit

Court for Howard County, Maryland.  The case was removed timely

to this Court [Document 1].

As discussed herein, the Complaint does not meet the

federal pleading standards and must be dismissed.  However, in

light of the materials submitted in connection with the instant

motion – in particular the Howard County Office of Human Rights

Written Findings of Reasonable Cause [Document 18-1] – it

appears possible that Plaintiff may be able to file an Amended

Complaint sufficient to avoid dismissal of at least some, if not all, of her claims.

Under the circumstances, the Court will dismiss the Complaint and grant Plaintiff leave to file an Amended Complaint that will suffice to meet the applicable pleading standards.

II.  INTRODUCTION[1]

At all times relevant hereto, Defendant Harris Corporation ("Harris"), a "global" corporation, based in Melbourne, Florida, has maintained an office in Columbia, Maryland.  From about 1996 through early 2010, Plaintiff Karen E. Greene, presumably operating as a proprietorship named "Karen Greene-CS," provided office cleaning services to Harris in Columbia.  For most of this period, there were no problems in the working relationship. On March 1, 2008, Greene (Karen Greene, CS) and Harris entered into a renewable contract for cleaning services at the Columbia office, with the contract automatically renewing until its termination in February 2010.

Problems developed after Defendant Harl Dan Pierce ("Pierce") began working at Harris' Columbia office as Director of Engineering in October 2008.  Pierce acted rudely toward Greene.  For instance, he never responded to greetings from

---

[1]    The "facts" herein are as alleged by Plaintiff in the Complaint and are not necessarily agreed upon by the Defendants.

Greene, "acting as if she were invisible," while responding to other employees.  Compl. ¶ 23-24.

During a meeting in December 2009, Pierce stated to Harris staff members (outside the presence of Greene) that Greene "dressed like a man, 'which really bothered him.'"  Compl. ¶ 33. Pierce further described Greene as "'frumpy, dumpy and dresses like a man in flannel and jeans.'"  Compl. ¶ 34.  Pierce then asked the staff if Greene's appearance bothered them as well, to which they replied no.  Pierce then repeated that Greene was "'frumpy, dumpy, mopey, gloomy, the way she mopes around here. . . . It bothers me.'"  Compl. ¶ 39.

In late January to early February 2010, Pierce made similar remarks about Greene's appearance to a different group of Harris employees at a staff meeting.[2]  At this time, a staff member informed Pierce that Greene was a lesbian.  Pierce then "appeared visibly upset and then disgusted."  Compl. ¶ 48. Shortly thereafter, Pierce reviewed Greene's invoices for the previous several months, which he claimed was for budgetary reasons.  However, Harris had reviewed budgetary issues around June 2009 and at that time "had taken budget-reducing action, including layoffs." Compl. ¶ 54.  Greene alleges that – in some

---

[2]     Pierce never "complained about the personal appearance or manner of dress of other Harris employees."  Compl. ¶ 49.

3

context not specified in the Complaint, Pierce said that the
amount Harris paid Greene was "'[m]ore than double the going
market rate for cleaning.'"  Compl. ¶ 56.  Greene alleges that
"Harris documents refute this contention" and that Greene's
contract was the only one Pierce reviewed for budgetary
concerns.  Compl. ¶ 57, 59.

Pierce had his secretary draft a termination letter, which
Greene found on top of the waste basket during a routine
cleaning of Pierce's office.  Greene later met with Pierce, who
asserted that he had not intended for Greene to see the letter,
but did affirm that Greene's contract had been terminated.
During this meeting, Greene stated "'[y]ou have treated me like
dog shit, therefore, I have no respect for you, Mr. Pierce,'"
but otherwise remained calm and professional.  Compl. ¶ 80-81.
Greene agreed to continue cleaning the office until March 31,
2010.  During Greene's remaining time at Harris, Pierce made
efforts to avoid Greene and asked his secretary on one occasion
whether she knew anything about Greene's relationship with
another female Harris employee.

In April 2010, Pierce contracted with Eurest, Inc.
("Eurest") to provide cleaning services for the Columbia office.
However, initially, the Eurest service was poor - the cleaning

crews often did not show up and provided less than adequate
cleaning.

In December 2010, Eurest hired Greene to clean the Harris
office starting December 6, 2010. However, on December 10, when
Pierce saw Greene cleaning the office, he "immediately called
the Harris Rochester, NY office," resulting in Harris' security
escorting Greene from the premises. Compl. ¶ 127-28. Pierce
then called a Eurest manager and made statements that caused
Eurest to fire Greene. Compl. ¶ 129-132.


III. <u>PROCEDURAL BACKGROUND</u>

On December 16, 2010, Greene filed a discrimination
complaint against Harris with the Howard County Office of Human
Rights ("OHR"), asserting discrimination on the basis of sexual
orientation and personal appearance in violation of the Howard
County Code, "Unlawful Employment Practices" § 12.208, I(a) &
II(a)(1)-(2).

On December 21, 2011, the Howard County OHR found probable
cause for discrimination. On November 28, 2012, Greene filed
the instant action in the Circuit Court for Howard County,
Maryland against Harris Corporation and Harl Dan Pierce. On
January 17, 2013, Harris (with Pierce's consent) timely removed
the action to this Court.

In the Complaint, Greene presents claims in three causes of
action:

| | |
|---|---|
| First: | Discrimination Based on Sexual Orientation |
| Second: | Discrimination Based on Personal Appearance/Manner of Dress |
| Third: | Tortious Interference with Business Relationship – Eurest |

By the instant motions, Harris and Pierce seek dismissal of
all claims against them pursuant to Federal Rule of Civil
Procedure 12(b)(6).


IV.  <u>DISMISSAL STANDARD</u>

A motion to dismiss filed pursuant to Rule 12(b)(6)[3] tests
the legal sufficiency of a complaint.  A complaint need only
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief, in order to give the
defendant fair notice of what the ... claim is and the grounds
upon which it rests."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,
555 (2007) (citations omitted).  When evaluating a 12(b)(6)
motion to dismiss, a plaintiff's well-pleaded allegations are
accepted as true and the complaint is viewed in the light most
favorable to the plaintiff.  However, conclusory statements or a

---

[3]    All "Rule" references herein are to the Federal Rules of
Civil Procedure.

"formulaic recitation of the elements of a cause of action" will
not suffice.  Id.  A complaint must allege sufficient facts to
"cross 'the line between possibility and plausibility of
entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186,
193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim
is "a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense."  Id.  Thus,
if the well-pleaded facts contained within a complaint "do not
permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged – but it has not shown –
that the pleader is entitled to relief."  Id. (quoting Ashcroft
v. Iqbal, 556 U.S. 662, 679 (2009)) (internal quotation marks
omitted).

V.    DISCUSSION

A.    Employment Discrimination Claims (1st & 2nd Causes)

In Counts I and II, Greene alleges that Harris
discriminated against her on the basis of sexual orientation and
personal appearance in violation of the Howard County Code.

The Howard County Code ("HCC"), "Unlawful Employment
Practices," § 12.208, II(a)(1) states that "[i]t shall be
unlawful if, because of discrimination, an employer. . .

discharges a person," wherein sexual orientation and personal appearance are protected classes.

### 1. Employment Relationship

Harris contends that it cannot be held liable under Counts I and II because Harris was not Greene's employer. Greene asserts that Harris was her employer for purposes of her employment discrimination claims under a "lent employee/dual employment" theory.

### a. The "Lent Employee/Dual Employment" Theory

Although the definitions of protected classes differ, the HCC provision for employment discrimination is analogous to Maryland[4] and federal[5] employment discrimination provisions.

The HCC, in language essentially the same as used in the Maryland and federal counterpart provisions[6], defines an

---

[4]     Md. Code Ann., State Gov't § 20-606.

[5]     Title VII, 42 U.S.C. § 2000e-2.

[6]     Under Maryland state law, "employer" is defined as "i) a person that: 1. is engaged in an industry or business; and 2. has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year; and (ii) an agent of a person described in item (i) of this paragraph" and employee is defined as "an individual employed by an employer." Md. Code, State Gov't § 20-6019(c)(1) & (d)(1).

Under Title VII, the term "employer" means "a person engaged in an industry affecting commerce who has fifteen or

"employer" as "a person, engaged in an industry or business, who
has five or more full-time or part-time employees for each
working day in each 20 or more calendar weeks in the current or
previous calendar year and any agent or such a person. . . "
HCC § 12.208, I(d).  "Employee" is defined as "an individual
employed by an employer. . . ."  Id. at I(c).

    The Maryland Court of Appeals has stated that "Title VII is
the federal analog to Article 49B of the Maryland Code" and "our
courts traditionally seek guidance from federal cases in
interpreting Maryland's Article 49B."[7]  Taylor v. Giant of Md.,
LLC., 33 A.3d 445, 459 (Md. 2011)(quoting Haas v. Lockheed
Martin Corp., 914 A.2d 735, 742 n. 8 (Md. 2007)); see also
Bishop v. Bd. of Educ. of Calvert Cnty., CIV.A.DKC 11-1100, 2011
WL 2651246, at *9 (D. Md. July 5, 2011), aff'd sub nom. Bishop
v. Bd. of Educ. for Calvert Cnty. Pub. Sch., 466 F. App'x 261
(4th Cir. 2012) (explaining that Maryland courts routinely apply
Title VII standards to Maryland Title 20 discrimination cases).

---

more employees for each working day in each of twenty or more
calendar weeks in the current or preceding calendar year, and
any agent of such a person" and the term "employee" means "an
individual employed by an employer. . . ."  42 U.S.C. § 2000e(b)
& (f).

[7]    Md. Code Ann., State Gov't § 20-601 replaces Article 49B.
See Md. Code Ann., State Gov't § 20-601 (Reviser's Notes) ("This
section is new language derived without substantive change from
former Art. 49B.").

The United States Court of Appeals for the Fourth Circuit
considers a multitude of factors to assess whether a plaintiff
is an employee of the defendant for purposes of a Title VII
employment discrimination claim.  These include, in addition to
the predominate factor of the right to control the putative
employee:

> (1) the kind of occupation, with
> reference to whether the work usually is
> done under the direction of a supervisor or
> is done by a specialist without supervision;
> (2) the skill required in the particular
> occupation; (3) whether the "employer" or
> the individual in question furnishes the
> equipment used and the place of work; (4)
> the length of time during which the
> individual has worked; (5) the method of
> payment, whether by time or by the job; (6)
> the manner in which the work relationship is
> terminated; i.e., by one or both parties,
> with or without notice and explanation; (7)
> whether annual leave is afforded; (8)
> whether the work is an integral part of the
> business of the "employer"; (9) whether the
> worker accumulates retirement benefits; (10)
> whether the "employer" pays social security
> taxes; and (11) the intention of the
> parties.

Garrett v. Phillip Mills, Inc., 721 F.2d 979, 982 (4th Cir.
1983).[8]

---

[8]     The Maryland Court of Appeals "has traditionally considered
five criteria in determining whether or not an employer/employee
relationship exists between two parties."  Whitehead v. Safway
Steel Prods., Inc., 497 A.2d 803, 808 (Md. 1985).  However,
similar to the Title VII test, control is the overriding
consideration.  See id. at 809 ("Of the five factors, the factor

It appears at least plausible for Greene to contend that,
in the context of employment discrimination claims, it is
possible for a plaintiff to be considered to have more than one
employer. See Barnett v. Uniformed Servs. Univ. of the Health
Sciences, CIV.A. DKC 10-2681, 2011 WL 3511049, at *7 (D. Md.
Aug. 9, 2011)("Here, Ms. Barnett sufficiently pleaded that
USUHS, in addition to Corbin, was her employer for the purposes
of her Title VII and Rehabilitation Act claims.").

Accordingly, Counts I and II are not dismissed on the basis
of the unavailability of a "lent employee/dual employment"
theory.  However, the Complaint does not contain sufficient
factual allegations to support the theory.


b.   Adequacy of Factual Allegations

To avoid dismissal, a complaint must contain sufficient
factual averments to give rise to a plausible claim, i.e., to
present a plausible contention that all of the elements of the
claim can be established.  In the instant case, this requires
particular factual assertions, not conclusory statements,
regarding the existence of the employer/employee relationship

of control stands out as the most important. We have said, for
example, that whether the employer 'has the right to control and
direct the employee in the performance of the work and in the
manner in which the work is to be done' is the 'decisive,' or
'controlling' test.")(internal citations omitted).

with Harris.  See, e.g., Mangram v. General Motors Corp., 108

F.3d 61, 63 (4th Cir. 1997) (applying Garrett in the ADEA

context and stating that the plaintiff's "claim must fail

because he has not alleged facts which would establish that he

was an employee or that an employment relationship was ever

contemplated during any phase of his relationship with General

Motors"); Moret v. Harvey, 381 F. Supp. 2d 458, 466-67 (D. Md.

2005) ("Moret has alleged sufficient facts, which if proven, may

demonstrate that Defendant exercised a right of control over her

employment, and therefore Moret was not an independent

contractor.").

The Complaint does not include adequate specific factual

allegations.  Greene contends that the facts surrounding her

employment relationship with Harris, including the relationship

between Harris and Eurest, are capable of surfacing only after

discovery.  However, before requiring Harris and Eurest to bear

the burden of discovery, it is necessary for Greene to allege

specific facts that would no doubt be within her personal

knowledge without discovery.  Surely, she is aware of the

details of her engagement, supervision, working conditions, etc.

Facts within Greene's personal experience, such as who

supervised her and who controlled her activities, are capable of

being averred.  Compare Barnett, 2011 WL 3511049 at *7 (finding

12

that the plaintiff pled sufficient facts to show an employment relationship, because the plaintiff pleaded that her "daily activities were supervised and directed exclusively" by defendant, defendant interviewed and hired her, furnished her equipment, created performance procedures, and "exercised substantial control over [her] activities").

Accordingly, the Court finds Counts I and II of the Complaint inadequate to present a plausible claim that she was an employee of Harris for purposes of her employment discrimination claims.

### 2.  Discrimination Allegations

The dismissal of Counts I and II due to the failure adequately to allege employee status renders moot, as to the instant motion, whether Greene has adequately alleged employment discrimination.  Since Greene shall be given leave to file an Amended Complaint, the ultimate decision on her discrimination allegations will be based upon the allegations in the Amended Complaint, if she files one.

B.  <u>Tortious Interference (Third Cause)</u>

    1.  <u>Adequacy of Pleading the Claim</u>

To establish a prima facie case of tortious interference

with a business relationship, a plaintiff must prove:

1) intentional and willful acts;

2) calculated to cause damage to the plaintiffs in their
   lawful business;

3) done with the unlawful purpose to cause such damage and
   loss, without right or justifiable cause on the part of
   the defendants (which constitutes malice); and

4) actual damage and loss resulting.

<u>Painter's Mill Grille, LLC v. Brown</u>, 716 F.3d 342, 354 (4th Cir.

2013) (citing <u>Alexander & Alexander, Inc. v. B. Dixon Evander &</u>

<u>Assocs.</u>, 650 A.2d 260, 269 (Md. 1994)).  That is, a claim for

tortious interference with a business relationship requires

factual allegations sufficient to support a plausible claim that

the defendant (1) had tortious intent and (2) engaged in

"improper or wrongful conduct."  <u>Alexander & Alexander Inc.</u>, 650

A.2d at 271 (internal citations omitted).

    In this context, "tortious intent" means the intent "to

harm the plaintiff or to benefit the defendant at the expense of

the plaintiff."  <u>Id.</u> (internal citations omitted).  Wrongful or

unlawful acts include "common law torts and violence or

intimidation, defamation, injurious falsehood or other fraud,

violation of criminal law, and the institution or threat of

14

groundless civil suits or criminal prosecutions in bad faith."
Id. (internal citations omitted). However, "'actual malice,' in
the sense of ill will, hatred or spite, may be sufficient to
make an act of interference wrongful where the defendant's
malice is the primary factor that motivates the interference."
Id.

The Complaint does not contain specific factual allegations
to present a plausible claim that there was a "wrongful act."
Rather, the Complaint presents conclusory, ambiguous
allegations.

As well stated by Judge Fawcett of the Middle District of
Florida, "Plaintiffs in federal court are permitted to plead in
the alternative . . . but they are not permitted to plead 'in
the ambiguous.'" J & J Sports Prods., Inc. v. Torres,
6:09CV391-ORL-19DAB, 2009 WL 1774268, at *3 (M.D. Fla. June 22,
2009).

The Complaint states that on December 10, 2010, Pierce
called Harris' security and caused Greene's removal from the
premises. Compl. ¶ 127-28. At some unspecified date and time
thereafter, a Eurest manager received a call "from Harris"
[presumably Pierce] "informing him that Ms. Greene was not
permitted on its premises because Harris had to remove her
during the time she worked directly for Harris." Comp. ¶ 129.

The Complaint does not allege that this was a literally false statement.

The Complaint states that Harris [presumably Pierce] told [the Eurest manger] that "Ms. Greene could not work at the Columbia office again." Compl. ¶ 130. The Complaint does not allege that this was a false statement.

The Complaint states that "[d]uring this call, Harris [Pierce] conveyed false and inflammatory information about Ms. Greene." Compl. ¶ 131. This conclusory allegation is insufficient. "While a court must accept the material facts alleged in the complaint as true, statements of bare legal conclusions are not entitled to the assumption of truth and are insufficient to state a claim." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011)(internal quotations omitted).

The "bottom line" is that Greene "does not allege facts from which this court could infer that defendants' conduct was wrongful or unlawful." See Goode v. Am. Veterans, Inc., 874 F. Supp. 2d 430, 448 (D. Md. 2012); compare Kwang doe Kwang Dong Pharm. Co. v. Han, 205 F. Supp. 2d 489, 496 (D. Md. 2002) (finding that plaintiff adequately pleaded a "wrongful" defamatory act to sustain his tortious interference claim "by alleging that KD falsely told Georgetown that Han had misappropriated research money for his own use and had not met

his research schedule"), with Baron Fin. Corp. v. Natanzon, 471
F. Supp. 2d 535, 541-42 (D. Md. 2006) (finding counterclaim
failed to allege facts sufficient to support defamation or
unlawful intimation claim for purposes of "wrongful act" where
counter-plaintiff alleged the counter-defendants made comments
that they were taking "legal action against [the counter-
plaintiff] seeking substantial money damages").

The Court finds the Complaint does not adequately plead a
tortious interference claim.


2.   Potential Pierce Liability

Generally an employee committing a tort within the scope of
his employment can be held jointly and severally liable with the
employer.  See Tedrow v. Deskin, 290 A.2d 799, 802 (1972)("The
general rule is that corporate officers or agents are personally
liable for those torts which they personally commit, or which
they inspire or participate in, even though performed in the
name of an artificial body."); Zeman v. Lotus Heart, Inc., 717
F. Supp. 373, 375 (D. Md. 1989) ("The Burrowses take no issue
with the principle that agents and employees of a corporation
may become jointly and severally liable with the corporation for
torts committed by them while in the scope of service to the
corporation.").

There is an exception to the general rule of joint and several employer/employee liability for certain tortious interference with business relations claims. As explained in Bleich v. Florence Crittenton Servs. of Baltimore, Inc.:

> It is well established that in order to state a cause of action for tortious interference with a business relationship, a plaintiff must allege that a third party . . . intentionally interfered with the business relationship between the plaintiff and another. . . Maryland courts have never permitted recovery for the tort of intentional interference with a contract when both the defendant and the plaintiff were parties to the contract. Thus, when an employee acts within the scope of her employment, or as an agent of her employer, she cannot be held liable for interfering with the contract, business relationships, or economic relationships, between the employer and another.

632 A.2d 463, 474-75 (Md. Ct. Spec. App. 1993)(internal citations and quotations omitted); see also, K & K Mgmt., Inc. v. Lee, 557 A.2d 965, 981, n. 14 (Md. 1989) (rejecting "an analysis under which corporate officers, agents or employees, acting on behalf of a corporation within the scope of their authority, are viewed as actors (D) separate from their corporation (T) and thereby can maliciously interfere with business relations between their corporation (T) and the plaintiff (P)")(emphasis added); Miller v. Ratner, 688 A.2d 976, 997-98 (Md. Ct. Spec. App. 1997)(rejecting individual defendant

liability for tortious interference with a prospective advantage between the plaintiff and a prospective client where the individual defendant was a corporate head of the prospective client's parent company).

In the instant case, Greene is not claiming that Harris tortiously interfered with the business relationship between his employer Harris and Eurest.  Rather, Greene is asserting a claim based on the contention that Harris (by its agent Pierce) tortiously interfered with the relationship between Eurest and Greene.  Hence, the Court finds at least plausible, Greene's claim that Pierce could be held jointly and severally liable with his employer Harris on Greene's tortious interference claim.  See Paccar Inc. v. Elliot Wilson Capitol Trucks LLC, 905 F. Supp. 2d 675, 695 (D. Md. 2012)(an employee personally involved in the alleged tortious interference could be held personally liable).

The Court, therefore, concludes that if Greene were adequately to plead a claim that Pierce, acting within the scope of his employment with Harris, tortiously interfered with Greene's relationship with Eurest, there would be a plausible claim that Pierce would be jointly and severally liable with Harris.

## C.    Amended Complaint

The Federal Rules of Civil Procedure provide that a court "should freely give leave [to amend] when justice so requires." Rule 15(a)(2).

Defendants assert that any amendment would be futile for various reasons.  Materials filed during the briefing of the instant motion indicate that Greene may well be able to file an Amended Complaint that adequately pleads one or more of her claims.

Plaintiff shall have the opportunity to file an Amended Complaint and Defendants may, if appropriate, seek dismissal of that pleading.


## VI.    CONCLUSION

For the foregoing reasons:

1.  Defendant Harris Corp.'s Motion to Dismiss [Document 8] is GRANTED IN PART.

2.  Defendant Harl Dan Pierce's Motion to Dismiss [Document 13] is GRANTED IN PART.

3.  The Complaint [Document 2] is DISMISSED WITHOUT PREJUDICE.

4.  Plaintiff may file an Amended Complaint by
        August 30, 2013.


SO ORDERED, this <u>Wednesday, July 24, 2013</u>.


                    _____/s/_____
                        Marvin J. Garbis
                    United States District Judge